*Washington v. William Morris Endeavor Entertainment, LLC et al.*, Case
No. 10-9647-PKC (SDNY)

# July 3, 2014 Declaration of Michael P. Zweig

# Exhibit 2

## AMERICAN ARBITRATION ASSOCIATION

MARCUS I. WASHINGTON,             :
                                  :

          Claimant,           :
                                  :

      v.                      :
                                  :   Case No. 13 160 01426 12

WILLIAM MORRIS ENDEAVOR    :
ENTERTAINMENT, LLC, f/k/a WILLIAM  :
MORRIS AGENCY, INC., JEFFREY    :
MEADE and SARAH WINIARSKI,     :
                                  :

          Respondents.      :

---

## MEMORANDUM

---

      William Morris Endeavor Entertainment, LLC, Jeffrey Meade, and Sarah Winiarski (collectively, Respondents) move for an order dismissing Marcus Washington's claims with prejudice and terminating this proceeding. Despite receiving an extension of time to respond, Mr. Washington did not do so.

      I have carefully considered Respondents' motion, and for the following reasons, I will grant it.

      The course of this proceeding is detailed in my prior memoranda and orders, and I therefore pick up where I left off: the orders of April 18, 2014. In the first order, I vacated the Partial Final Award following the previous arbitrator's disqualification. In the second order, I sanctioned Mr. Washington for proceeding in this arbitration in bad faith.

      Mr. Washington reacted that same day in an email to me, the American Arbitration Association (AAA), and opposing counsel:

> Since I have already informed both the AAA and Arbitrator Lewis,
> that I would I would [sic] be seeking Arbitrator Lewis'
> disqualification prior to the two Orders he issued today, I ask that
> Arbitrator Lewis not waste any further time and comply with this
> threat to 'terminate this arbitration, with prejudice,' so that I can
> finally move this case back to the federal court.  An impartial jury
> will ultimately decide whether or not I have been deprived of my
> rights under the color of law and whether various individuals and
> entities involved with this case are conspiring to interfere with the
> civil & human rights of African Americans, in violation of the Ku
> Klux Klan Act of 1871.  If Arbitrator Lewis would issue his 'final'
> Order by the end of today, that would be greatly appreciated.

Mr. Washington then proceeded to do exactly what he had just been sanctioned for doing.  In

emails and blog posts on April 18 and 19, he continued to baselessly accuse me, the AAA, and

opposing counsel of criminal conduct; he threatened to sue me, the previous arbitrator, AAA

personnel, opposing counsel, and opposing counsel's firm; and he threatened to file fraudulent

commercial liens against "all parties involved" if not successful in that lawsuit.[1]

---

[1] Post of April 18, 2014 ("in violation of the Federal Arbitration Act and the Review
Standards of the AAA's ARC, the FRAUDULENTLY APPOINTED arbitrator Timothy K. Lewis vacates
Arbitrator David L. Gregory's Partial Final Award and holds me in CONTEMPT for refusing to remain
silent about the FRAUD being perpetrated in my case!!! At this stage, Arbitrator Lewis can do whatever
he so shall please, especially since none of his decisions have been grounded in fact or law. Also, in a
footnote, he skirts around the relationship between Loeb & Loeb LLP attorney Christian Carbone and his
wife, Sasha Angelique Carbone — who just so happens to be the Associate General Counsel for the
American Arbitration Association!!! This is a clear ethical violation and further proof that Loeb & Loeb
LLP has been engaging in fraud since day one of this case, yet Lewis sees nothing wrong with this and
orders me to pay two-thirds of William Morris' legal expenses from February to present. As previously
stated, I refuse to continuing arbitrating these claims and I QUIT with this aspect of my case! Thankfully,
fraud has no statute of limitations. I feel like I'm about to have a nervous breakdown, and as a result, I
think it's best that I put my energy into completing my complaint against Loeb & Loeb LLP, Michael P.
Zweig, Christian Carbone, Timothy K. Lewis and others who have deprived me of my constitutional,
statutory and God-given rights under the color law, as part of a larger conspiracy to interfere with the
human rights of African Americans, in violation of the Ku Klux Klan Act of 1871. If an impartial jury
doesn't determine the merits of those claims, I will be filing commercial liens against all parties
involved."); Post of April 19, 2014 ("'The Association does not have any authority to change or revoke
any prior rulings made by Arbitrator Gregory. Any requests for clarification and/or modification shall be
raised to the new arbitrator upon appointment.' — Heather Santo, American Arbitration Association
Director, January 30, 2014. She's definitely getting sued!"); Email from Marcus Washington to Timothy
Lewis, David Gregory, the AAA, and Opposing Counsel (April 19, 2014) ("Since Lewis' decisions are
not based on the facts or grounded in the law, I ask that, Lewis issues his 'final' decision in the next thirty
days, because in the next month or so, I will be suing each individual named in this e-mail, as well as
*...Continued*

On April 29, I held a telephonic status conference with the parties. The purpose of the call was generally to chart a path forward following my orders of April 18 and specifically to discuss the status of the pending motions for summary judgment and the need for additional discovery. I confirmed at the outset that neither party was recording the call, warning that it would be a violation of the Confidentiality Order to do so. Both parties said they were not, so I proceeded. We discussed Mr. Washington's request for additional discovery, and though I openly expressed my intent to grant it, the call devolved into disorder upon my asking Mr. Washington what discovery he wanted. Mr. Washington engaged in his now-familiar routine of interrupting, accusing, and stalling. About half way through the call, Mr. Washington admitted that he was recording it. I responded by asking Mr. Washington – repeatedly – whether it was still his desire that I terminate this arbitration, as he requested by email, and if not whether he intended to proceed in good faith. He answered each time that due to "ongoing fraud" he will not continue in good faith. Near the end of the call, he stated that he would soon be suing me.

I issued an order the next day inviting Respondents to move to dismiss Mr. Washington's claims given his specific request that I do so, his admitted refusal to arbitrate in good faith, and his egregious conduct during the previous day's conference call. Meanwhile, Mr. Washington continued to violate the Confidentiality Order. On May 2, he blogged about the conference call, again claiming to be the victim of "corruption and fraud" and specifically noting that "at the end of the call, I stated that as long as fraud was continuing to occur in this

---

*Continued from previous page*
Loeb & Loeb LLP and the AAA, for engaging in fraud, depriving me of my constitutional, statutory ad God-given rights under the color of law, as well as aiding & abetting in a larger conspiracy to interfere with the human rights of African Americans, in violation of the Ku Klux Klan Act of 1871.").

proceeding, I could no longer continue arbitrating this case in good faith."[2]  He continued on

May 4, posting to his blog extensive quotes from confidential filings in this proceeding.[3]

_____

[2] Post of May 2, 2014 ("during our second conference call earlier this week, Arbitrator Timothy K. Lewis refused to issue a decision regarding the enforceability of William Morris' arbitration agreements (per P. Kevin Castel's July 20, 2011 Stay Order), while continuing to entertain William Morris' counterargument that I breached their agreement by attempting in good faith, to uphold the public policy goals of the Civil Rights Act of 1964 (e.g. eradicate institutional racism throughout William Morris' workplace and Hollywood) when I filed my complaint with the Southern District of New York. smdh!!!  In less than 2 months of being involved in this case and issuing decisions only favorable to William Morris, this fraudulently appointed arbitrator has made more than $23,500.00 from violating and depriving me of my constitutional and statutory rights under the color of law. And although I objected to having someone who is not employed by the AAA to profit from this case — Bradley A. Nankerville, an Associate at Lewis' law firm Schnader LLP — the AAA has allowed this person to act as Lewis' 'research assistant.' Of course, the only things he seems to be researching are things that are adverse to me.  After I informed Lewis that he improperly made a decision on that issue in his Order vacating Arbitrator David L. Gregory's Partial Final Award without ever discussing the facts of the case or citing the law, he basically told me to move on. I am not a lawyer, but clearly the unique arguments I raised challenging the enforceability of William Morris' pre-dispute, mandatory arbitration agreements have merit if no finder of fact can write an impartial opinion explaining why the arbitration agreements I signed as a condition of employment are enforceable as a matter of law and public policy.  If they could, they would have easily been able to apply the law based on the facts of the case, to demonstrate why William Morris' contracts should be upheld in this particular case and explain why arbitration is a more appropriate forum than the federal court, to achieve the public policy goals of this nation's antidiscrimination statutes. They cannot for a reason . . . If Lewis issues a 'final' decision on the merits without resolving this preliminary matter, he will have 'exceed[ed] his powers' and violated other portions enumerated under section 10 of the Federal Arbitration Act — in the same way that Arbitrator David L. Gregory did. This is why at the end of the call, I stated that as long as fraud was continuing to occur in this proceeding, I could no longer continue arbitrating this case in good faith. How much more corruption and fraud do I have to endure on my own before someone comes to my aid and helps me in speaking out against these injustices?!").

[3] Post of May 4, 2014 ("'Washington has moved for summary judgment on his claims and Respondents William Morris Endeavor Entertainment LLC (WME), Jeffrey Meade (Meade) and Sarah Van Hoven (Van Hoven) have cross moved to dismiss all of Washington's claims. Both parties agreed during the first conference held in this matter that the summary judgment process would be an appropriate means to resolve the claims in this proceeding.' — Michael P. Zweig, November 6, 2012."); Post of May 4, 2014 ("'In sum, Washington has presented and can present no factual basis to support any of his claims. Based largely on vast conspiracy theories, discredited allegations of institutional racism and his own animus, his claims are not only utterly implausible, they are such that no reasonable finder of fact could rule in his favor. Accordingly, under the applicable and governing law, they must be dismissed.' — Michael P. Zweig, November 6, 2012. If I did not present any factual basis to support any of my claims, then please explain to me how David L. Gregory — an arbitrator for the American Arbitration Association and professor in employment & labor law for 31 years — determined in his Partial Final Award on December 17, 2013 that William Morris Endeavor Entertainment discriminated against because of my race in violation of federal, state and local law prohibiting discrimination in employment. What's crazy to me is that if the AAA disqualified Gregory due to a number of reasons indicating gross arbitrator

_...Continued_

On May 9, Respondents filed their motion to dismiss Mr. Washington's claims and to terminate this proceeding. That same day Mr. Washington complained in a blog post about the "the overall FRAUD that's occurring in this case" at the hands of "arbitrators & federal judges." He postured that "[a]n impartial jury in the federal court should determine whether or not fraud has and is still occurring in my case. I will be filing my complaint in the next month or so."[4] More violations of the Confidentiality Order followed.[5] By email on May 14, Mr. Washington claimed to be having computer problems, making it impossible for him to draft a response and to access his files related to this arbitration. Respondents agreed to a modest

---

*Continued from previous page*
misconduct after he issued his Award, why didn't they remove him entirely from arbitrating any further cases on their behalf, particularly those related to employment discrimination and civil rights? It's all a sham because the AAA served as one of the sponsors for St. John's University (where Gregory teaches) and NYU's recent symposium on the 50th Anniversary of the Civil Rights Act of 1964.").

[4] Post of May 9, 2014 ("as long as the arbitrators & federal judges continue to ignore the law and deprive me of my constitutional rights under the color of law, i will continue to inform the world about the overall FRAUD that's occurring in this case. An impartial jury in the federal court should determine whether or not fraud has and is still occurring in my case. I will be filing my complaint in the next month or so. Justice will ultimately prevail.").

[5] Post of May 10, 2014 ("do YOU honestly think i'm about to pay Loeb & Loeb LLP $47,000 (and more by the time Arbitrator Timothy K. Lewis is done), when 1. they should not have been allowed to represent William Morris in my case due to the highly unethical and criminal conduct engaged in Rowe v. WMA (98-Civ-8272) and 2. i'm about to sue them for FRAUD (and causes of action)!?!"); Post of May 13, 2014 ("'Nor is there any legitimate argument that Mr. Washington can present as to the enforceability of the Mutual Arbitration Agreement. See e.g. JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (challenges to enforceability based on claims of contract adhesion and unconscionability to be decided by arbitrator); Wright v. SFX Entm't Inc., No. 00 Civ. 5354, 2001 WL103433 (S.D.N.Y. Feb. 7, 2001) (plaintiff's discrimination claims subject to arbitration including claims of arbitration agreement's unconscionability).' — Def. Motion to Dismiss Complaint and/or Compel Arbitration, February 25, 2011. In his decision upholding William Morris' arbitration agreements, federal judge P. Kevin Castel stated in his July 20, 2011 Stay Order that the arbitrator — not the federal court — had to determine issues of arbitrability. If my unconscionability arguments demonstrating that the mandatory, pre-dispute arbitration agreements I signed as a condition of employment are not 'legitimate,' then why have both arbitrators violated my constitutional rights to due process by refusing to issue a decision explaining why these 'agreements' to arbitrate should be upheld as a matter of law and public policy? I may not be a [seasoned] attorney like Michael P. Zweig and Christian Carbone of Loeb & Loeb LLP, but I damn sure ain't no fool.").

extension of time for Mr. Washington to respond. Mr. Washington returned this courtesy by

email on May 16, accusing me, the AAA, Respondents, and opposing counsel of criminal

conduct. Nonetheless, I granted Mr. Washington roughly two additional weeks, until May 30, to

respond and permitted him to file an enlarged handwritten response if he could not resolve his

technical difficulties.

Despite his May 14 claim of computer problems, Mr. Washington blogged *that*
*same day* about the complaint he was drafting against this arbitration's participants.[6] In the

remaining days leading up to May 30, Mr. Washington continued using his obvious technical

capacities to violate the Confidentiality Order rather than to respond to Respondents' motion.[7]

He even quoted extensively from files that he claimed were inaccessible.[8] Mr. Washington did

not file a response on May 30.

---

[6] Post of May 14, 2014 ("i only want to see rainbows for the next month!! God is so good! I didn't think I would be back in Miami so soon…but I'd much rather be working on my complaint against Loeb & Loeb LLP, Michael P. Zweig, Christian Carbone, the American Arbitration Association, Timothy K. Lewis, Heather Santo, P. Kevin Castel and others with this view, than in the projects in Brooklyn.").

[7] Post of May 16, 2014 ("PLEASE hurry up and issue your fraudulently procured 'FINAL' decision, so this case – as well as my complaint against Loeb & Loeb LLP and the AAA – can officially go back to the Southern District of New York. If God made man in his own image, and the first man on this planet was black and from Africa, what color would God be? White? LMAO! #FUCKracism").

[8] Post of May 24, 2014 ("'[Marcus Isaiah Washington] satisfies the prima facie test, with impressive qualifications (University of Miami accelerated graduation and a master's degree by age 23) and some initial successes in the industry before working for [the William Morris Agency].' — Arbitrator David L. Gregory's Partial Final Award, December 17, 2013. pg. 8."); Post of May 24, 2014 ("'I do not find the voluntary quit assertion by [William Morris] to be the only lens through which to evaluate [Marcus Isaiah Washington's] decision in 2010. I find it more likely that paternalistic soft racism identified Claimant as potentially problematic upon his first outreach to Human Resources. Any one of the representative twenty incidents cited and relied on by Respondent as evidence of Claimant's substandard work would, theoretically, be grounds for termination. Yet, that did not occur contemporaneous with the alleged incident. Rather, they are subsequently relied on by Respondent for maximum cumulative adverse influence after-the-fact.' — Arbitrator David L. Gregory's Partial Final Award, December 17, 2013. pg. 8."); Post of May 24, 2014 ("'I find that [Marcus Isaiah Washington] proves by a preponderance of evidence that he was unlawfully discriminated against because of his race.'
*…Continued*

Mr. Washington's violations of the Confidentiality Order continue.[9]

I will dismiss Mr. Washington's claims, on the merits and with prejudice, for two reasons. First, and most importantly, Mr. Washington has demanded this result, as Respondents accurately point out. Mot. at 6-7. Mr. Washington has for months made it clear that he "cannot and will not continuing litigating this case any further under the jurisdiction and supervision of the American Arbitration Association."[10] By email on April 19, Mr. Washington took this

---

*Continued from previous page*
— Arbitrator David L. Gregory's Partial Final Award, December 17, 2013. pg. 9."); Post of May 26, 2014 ("'Much of [Marcus Isaiah Washington's] theory of his case invokes his desire to achieve the eradication of what he alleges is a White supremacist Jewish regime and the corresponding structural redesign of the political, economic and social order of the United States.' — Arbitrator David L. Gregory's Partial Final Award, December 17, 2013. pg. 11.").

[9] Post of June 10, 2014 ("between February 20, 2014 and April 30, 2014, the unlawfully appointed 'Arbitrator' Timothy K. Lewis is expected to be paid more than $80,000.00 for his "services" — an amount to be paid for by William Morris... Other employees from Lewis' law firm are also seeking to be paid for their 'services,' although they should have absolutely NO INVOLVEMENT in this arbitration since they have no affiliation with the AAA. From August 21, 2012 to the date the original arbitrator issued his Partial Final Award (December 17, 2013), David L. Gregory — who read all of the pleadings from both the federal court and those submitted in arbitration – received $42,875.00. Does ANYTHING about this to you seem right or fair? #fraud"); Post of June 12, 2014 ("'Arbitration is supposed to be final and binding, but federal and state laws, and judicial doctrines, allow courts to vacate arbitrator awards.' Exactly! Since the AAA unlawfully removed the original arbitrator, David L. Gregory, before he could make a decision on the Appeal that was before him, as well as determine monetary relief, his Partial Final Award was 'final' for the sake of judicial review. As stated above, only the "court" can vacate the Award of an arbitrator — not the AAA or another arbitrator who was once a federal judge!!! Why would the AAA think I would remain silent about what's happening when they are clearly violating the law and engaging in fraud, as part of a larger effort to deprive me of my constitutional and statutory rights under the color of law? GTFOH!"); Post of June 13, 2014 ("it's 3 AM and i'm up working on this Complaint against Loeb & Loeb LLP and a number of other Defendants (post-hard drive crash).... i can't believe the shit they've put me through over the last six years. they will pay. Washington v. Loeb & Loeb LLP, Michael Zweig, Christian Carbone et al. 14 Civ. ___. SDNY."); Post of June 24, 2014 ("the posts from yesterday really helped me take this complaint to the next level! i'm only on day 12 of writing and there's no rush to submit it since the fraud is 'on-going.' i look forward to seeing what becomes of it a few months from now.").

[10] Letter from Marcus Washington to the Hon. P. Kevin Castel at 2 (Mar. 5, 2014); *see also* Letter from Marcus Washington to the Hon. P. Kevin Castel at 2 (Mar. 13, 2014) ("I cannot and will not continuing litigating this case any further under the jurisdiction and supervision of the American Arbitration Association."); Email from Marcus Washington to AAA and Opposing Counsel (March 13, 2014) ("I am not proceeding any further with the AAA and Lewis can do whatever he wants to do
*...Continued*

position a step further, latching on to language from one of my memoranda of that same day and affirmatively requesting that "Arbitrator Lewis not waste any further time and comply with his threat to 'terminate this arbitration, with prejudice,' so I can finally move this case back to the federal court. . . . If Arbitrator Lewis would issue his 'final' order by the end of today, that would be greatly appreciated." I gave Mr. Washington countless opportunities to walk back this request during the April 29 conference, but he refused. Instead, he simply repeated that because of some unspecified "ongoing fraud," he will not arbitrate this matter in good faith. Mr. Washington's request stands as part of this record, and I will abide. In accordance with his request, Mr. Washington's claims are dismissed with prejudice and this proceeding is over.[11]

Alternatively, I will dismiss Mr. Washington's demand as a sanction for his persistent, flagrant noncompliance with my orders, particularly the Confidentiality Order. I have the authority to impose this sanction. First and foremost, I draw inherent authority from the parties' broad arbitration agreement, which empowers me to resolve "any claim, dispute, and/or controversy . . . arising from, related to, or having any relationship or connection whatsoever with [Mr. Washington's] seeking employment with, maintaining employment by, or other association with [William Morris]." The agreement explicitly provides that "included within

---

*Continued from previous page*

because when it's all said and done, any adverse decision he makes against me will be vitiated due to fraud."); Letter from Marcus Washington to the Hon. P. Kevin Castel at 2 (Mar. 28, 2014) ("I cannot and will not continuing litigating this case any further under the jurisdiction and supervision of the American Arbitration Association."); Response to William Morris' Motion for Sanctions at 8 (April 7, 2014) ("I cannot and will not continuing litigating this case any further under the jurisdiction and supervision of the American Arbitration Association.").

[11] I recognize that Respondents have asserted a counterclaim against Mr. Washington for breach of the arbitration agreement, a claim that, like Mr. Washington's claims, must be arbitrated. But given Respondents' specific request that I not only dismiss Mr. Washington's claims but that I also dismiss this entire proceeding, I presume this request outweighs their interest in prosecuting the counterclaim.

[its] scope . . . are all disputes." As I noted in my previous memorandum sanctioning Mr. Washington, "a broad arbitration clause . . . confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith." *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009).

I also draw authority from the rules and applicable law governing this arbitration. The AAA Employment Arbitration Rules govern this arbitration, and they provide that "[t]he arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court . . . , in accordance with applicable law." Rule 39(d). The parties' arbitration agreement requires me to "apply [New York] procedural law" and "the substantive law of [New York] or federal law, or both, as applicable to the claims and defenses." Had this matter been in heard in a state or federal court, applicable law would have provided several possible bases for dismissing Mr. Washington's claims. *See Lipin v. Bender*, 644 N.E.2d 1300, 1303 (N.Y. 1994) (dismissing complaint as sanction pursuant to N.Y. C.P.L.R. 3103); *Kihl v. Pfeffer*, 722 N.E.2d 55, 58 (N.Y. 1999) (dismissing complaint as sanction pursuant to N.Y. C.P.L.R. 3126); *CDR Creances S.A.S. v Cohen*, 2014 N.Y. LEXIS 1002, at \*16 (N.Y. May 8, 2014) (dismissing complaint as sanction pursuant to N.Y. C.P.L.R. 3126 and, alternatively, the court's "inherent power to address actions which are meant to undermine the truth-seeking function of the judicial system and place in question the integrity of the courts and our system of justice"); *see also Ampudia v. Lloyd*, 531 Fed. Appx. 32, 35 (2d Cir. 2013) (dismissing complaint as sanction pursuant to Fed. R. Civ. P. 41(b)). Invoking all this authority, as well as Paragraph Six of the Confidentiality Order, I will dismiss Mr. Washington's claims with prejudice for the following reasons.

First, and most warranting of dismissal, Mr. Washington has not only conceded his bad faith but he has insisted that he will *never* proceed in good faith. Whatever fraud Mr. Washington believes he is the victim of does not justify his utter and outright contempt for this proceeding.

Second, Mr. Washington's conduct has single-handedly prevented this arbitration from moving forward in the four months since my appointment, and his open refusal to proceed in good faith ensures that it will not move forward as long as he is a participant.

Third, aside from his admission of bad faith, Mr. Washington has in fact *repeatedly* violated the Confidentiality Order by publicly posting to his blog information made confidential by that order and by harassing this arbitration's participants. This very conduct formed the basis of my April 18 decision to sanction Mr. Washington, yet his violations of the Confidentiality Order have only intensified since then. He now threatens this arbitration's participants with legal action unrelated to his claims in this proceeding, including the *illegal* filing of fraudulent commercial liens, and with alarming ambiguous statements like "they will pay." And he admittedly recorded the April 29 conference, despite my warning that any recordings would violate the Confidentiality Order and his own confirmation that he was not recording the call.

Fourth, Mr. Washington was on notice from the moment of my appointment that bad faith conduct by either party would not be tolerated and may result in dismissal. I noted in the Confidentiality Order itself that breaches would result not only in a monetary sanction but possibly also in "further sanctions" to be determined in my "absolute and sole discretion." In my February 27 order, I noted Mr. Washington's "deliberate violation of the Confidentiality Order" and expressly warned that "[f]urther violations of the Confidentiality Order or any other orders in

this proceeding may result in the dismissal of all claims for abuse of the arbitration process." Finally, in my April 18 memorandum sanctioning Mr. Washington, I "once again placed [him] on notice that his conduct in this proceeding is unacceptable and should it continue, may result in additional sanctions, including my recommendation to the AAA that it terminate this arbitration, with prejudice."

Mr. Washington was also well aware of the Confidentiality Order's vital importance and of the need to strictly comply with it. AAA Employment Arbitration Rule 23 provides that "[t]he arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality . . . ." Invoking this authority, I issued the Confidentiality Order "in light of the numerous postings and extra-arbitral commentary in connection with this arbitration on the internet and through other means which resulted in a finding of libel by the previous arbitrator." In my April 18 memorandum sanctioning Mr. Washington, I elaborated on why I issued the Confidentiality Order and why each party's compliance was so necessary to moving this arbitration forward:

> I [issued the Confidentiality Order] after having reviewed much of the record of the proceedings before my appointment. My review convinced me that this case had spun out of control, largely due to personal, highly charged, and entirely inappropriate public attacks by Mr. Washington on Arbitrator Gregory, the American Arbitration Association, and opposing counsel. These had infected this arbitration to such an extent that the integrity of the earlier proceedings and the Partial Final Award were challenged by one side, while the integrity of the arbitration process, the federal courts, the American judicial system, and opposing counsel were challenged by the other. Indeed, Mr. Washington's anti-Semitic invective, personal animus, and baseless, offensive claims reached such a volume that the previous arbitrator deemed them to constitute libel. It became clear to me that none of this would allow for an atmosphere conducive to the efficient and cost-effective resolution of serious claims of discrimination in employment.

It was also clear that not only had all of this made the process more time consuming and costly than it needed to be, thus defeating the most fundamental purpose of arbitration as a forum to resolve important disputes; it apparently played a role in the removal of the previous arbitrator, requiring a delay in the proceedings and the appointment of a new arbitrator.    This, again, hampered the efficient disposition of this matter.    And this was particularly unfair given that William Morris is paying both arbitrators' fees and is – along with Mr. Washington – entitled to the efficient disposition parties who bargain for and agree to arbitration expect.

I therefore issued the Confidentiality Order to restore order, efficiency, and decorum to a process that had become bogged down in personal attacks and unwarranted innuendo, and to enable this matter to proceed in good faith.

Mr. Washington's bad faith conduct continues to this day despite several warnings and despite his awareness of the Confidentiality Order's importance.

Fifth, sanctions short of dismissal have clearly failed to deter Mr. Washington's unacceptable behavior.  On April 18, I sanctioned him by assessing him two-thirds of Respondents' fees and costs from the date of my appointment.  But his violations of the Confidentiality Order have continued unabated.  Mr. Washington's ongoing violations of the Confidentiality Order, even in the face of a lesser sanction, indicate that nothing short of dismissal will be effective in compelling his compliance.

Sixth, Mr. Washington had an opportunity to be heard.  As explained, he was granted a generous extension to respond to this motion because of his alleged computer problems and was even permitted to file an enlarged handwritten response.  Instead, he continued violating the Confidentiality Order by publicly posting to his blog confidential information – including files from this arbitration that he claimed were inaccessible – and derogatory remarks about this arbitration's participants, obviously using an electronic resource that he could have used to draft

a response to this motion.[12]  Further, I have always stressed to Mr. Washington my willingness to

hear his claims fairly and have encouraged him to proceed in good faith.  Even in my April 18

memorandum sanctioning Mr. Washington, I stated:

> I hasten to note that there is still an opportunity for Mr.
> Washington to actively participate in this arbitration.  He has made
> very serious claims of discrimination that deserve a full and fair
> hearing.  This is the appropriate and, by law, the only forum in
> which his claims can be litigated.  I continue to urge him to avail
> himself of this process.  I am prepared to hear and decide his
> claims without bias or any preconceived notion of their substance
> or validity.
>
> The only thing necessary to move this arbitration forward
> efficiently and fairly is Mr. Washington's good faith participation.
> I hope that will occur going forward.

Mr. Washington has squandered this opportunity, choosing instead to permit this very serious

motion to go uncontested.

And seventh, Mr. Washington's conduct has severely prejudiced Respondents,

who have been forced to spend enormous sums of money and extended periods of time mired in

disputes about Mr. Washington's bad faith conduct rather than the substantive issues in this case.

Respondents have been further prejudiced by the constant, looming reality that Mr. Washington

will publicly disseminate, manipulate, and ridicule any materials they submit.  Finally,

Respondents have been fully deprived of any meaningful opportunity to prosecute their

counterclaim.

---

[12] Mr. Washington's recent blog posts leave no doubt that even if *his* computer "crashed,"
as he claimed in his May 14 email, he had access to *someone's* computer.  Post of June 13, 2014 (posting
photo of a laptop displaying his "Complaint against Loeb & Loeb LLP and a number of other
Defendants," promising that "they will pay," and stating "[t]hx Ms. H for letting me use your laptop!!
You're a life saver!!!").

For all these reasons, Mr. Washington's claims are hereby dismissed, with prejudice and on the merits, and the AAA is directed to mark this arbitration closed.

An appropriate order follows.


Dated: June 25, 2014                                        SO ORDERED:


                                                    Hon. Timothy K. Lewis


14

## AMERICAN ARBITRATION ASSOCIATION

MARCUS I. WASHINGTON,                          :
                                               :
            Claimant,                          :
                                               :
      v.                                        :
                                               :    Case No. 13 160 01426 12
WILLIAM MORRIS ENDEAVOR                         :
ENTERTAINMENT, LLC, f/k/a WILLIAM               :
MORRIS AGENCY, INC., JEFFREY                    :
MEADE and SARAH WINIARSKI,                      :
                                               :
            Respondents.                        :
                                               :

---

## ORDER

---

For the reasons set forth in the memorandum accompanying this order,

Respondents' motion to dismiss Mr. Washington's claims and to terminate this proceeding is

granted.  Mr. Washington's claims are hereby dismissed, with prejudice and on the merits, and

the AAA is directed to mark this arbitration closed.  In accordance with my memorandum and

order of April 18, 2014 granting Respondents' motion for contempt, and Respondents'

accounting of fees and costs of May 8, 2014, Respondents are hereby awarded $43,707.60.  The

parties shall otherwise bear their own costs and (in the case of Respondents) fees.


Dated: June 25, 2014                              SO ORDERED:


                                                  Hon. Timothy K. Lewis