UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARCUS I. WASHINGTON,                           :

        Plaintiff,                                  :

  -against-                                                  :

WILLIAM MORRIS ENDEAVOR                         :
ENTERTAINMENT, LLC, formerly known as              10 Civ 9647 (PKC)
the WILLIAM MORRIS AGENCY, INC.,                :
JEFF MEADE and SARAH WINIARSKI,
                                                           :

        Defendants.                                 :
------------------------------------------------------------X

# MEMORANDUM IN SUPPORT OF DEFENDANT WME'S MOTION FOR A FILING INJUNCTION AGAINST PLAINTIFF MARCUS WASHINGTON

LOEB & LOEB LLP

Michael P. Zweig
Christian D. Carbone
Michael Barnett
345 Park Avenue
New York, NY 10154
(212) 407-4000

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................... 2

    A. The AAA Arbitration Proceeding and Washington's Misconduct ................................. 2

    B. The Dismissal of Washington's Claims by Arbitrator Lewis ......................................... 6

    C. Threat of Continued Lawsuit Filings by Washington ..................................................... 7

III. ARGUMENT .......................................................................................................................... 7

    A. The Court Has The Authority To Enter An Injunction .................................................. 7

    B. Washington's Conduct Warrants Entry Of An Injunction ............................................. 8

IV. CONCLUSION ..................................................................................................................... 11

Defendant William Morris Endeavor Entertainment, LLC ("WME"), by its attorneys Loeb & Loeb LLP, respectfully submits this memorandum in support of its motion, made pursuant to the All Writs Act (28 U.S.C. §1651) and the Court's inherent powers, seeking entry of a filing injunction against Plaintiff Marcus Isaiah Washington ("Washington"). This Motion is supported by the Declaration of Michael P. Zweig, dated July 10, 2014 ("7/10/14 Zweig Decl."), with Exhibits A through G, and is also supported by the Declaration of Michael P. Zweig, dated July 3, 2014 ("7/3/14 Zweig Decl."), with Exhibits 1 through 5.

## I. PRELIMINARY STATEMENT

WME asks that the Court enjoin Washington from filing, without prior court approval, any additional proceedings, lawsuits or other actions that arise out of, refer to, or relate in any way to the claims asserted, or which could have been asserted, against WME and its affiliates in this action or the arbitration proceeding captioned <u>Washington v. William Morris Endeavor Entertainment, LLC et al</u>, AAA Case No. 13 160 01426 12, and the facts and circumstances underlying such claims.

An injunction is necessitated by Washington's history of vexatious litigation conduct and his recent threats to sue WME, its attorneys, numerous federal judges, the American Arbitration Association ("AAA"), the arbitrator and senior AAA staff, and/or to file "common law liens" against some or all of those persons and entities. Such a lawsuit would serve no purpose other than to harass those with whom Washington has come into contact in the course of pursuing claims that have now been decided and dismissed with prejudice in the underlying arbitration.[1]

---

[1] On July 3, 2014, WME moved to confirm the June 25, 2014 arbitration award dismissing Washington's claims with prejudice. Dkt. No. 49. The requested filing injunction would not prevent Washington from opposing that pending motion, as part of the instant proceeding.

## II.   STATEMENT OF FACTS

On December 22, 2010, Washington – notwithstanding his having previously agreed to arbitration of all employment-related claims – filed suit in this Court against WME and two of its Human Resources employees. Dkt. No. 2. On July 20, 2011, this Court granted WME's motion to compel arbitration and to stay this action. Dkt. No. 18; also at 2011 U.S. Dist. LEXIS 81346 (S.D.N.Y. July 20, 2011), mot. to dismiss granted in Case No. 11-3576 at Dkt. No. 39 (2d Cir. Dec. 13, 2011). The Second Circuit dismissed Washington's appeal on December 13, 2011. Id. On or about June 12, 2012, the Second Circuit issued a Notice of Non-Jurisdiction, in response to numerous additional filings by Washington in that court. Dkt. No. 67 in Case No. 11-3576.

### A.   The AAA Arbitration Proceeding and Washington's Misconduct

Washington filed a Demand for Arbitration with the AAA on June 15, 2012. 7/3/14 Zweig Decl., Exhibit 1. Around this time, Washington proceeded to embark upon a multi-year course of misconduct that included:

- Repeatedly accusing WME and its attorneys, Loeb & Loeb ("Loeb") of being part of a century-long conspiracy amongst Jews and whites to keep African-Americans out of Hollywood. His pernicious conspiracy theories, borne of anti-Semitism and racism, remained a consistent theme throughout Washington's filings. See, e.g., 7/3/14 Zweig Decl., Exhibit 3 at 2 (April 18, 2014 Arbitration Order finding Washington in contempt, noting the excessive volume of Washington's "anti-Semitic invective, personal animus, and baseless, offensive claims …").

- Disparaging WME, its counsel, the AAA, the arbitrator, Judges Castel and Patterson, and the Second Circuit and this Court, in public filings, to the media and on his blog, and repeatedly making defamatory and baseless accusations of criminal acts and corruption against the foregoing entities and persons. See, e.g., 7/3/14 Zweig Decl.,

2

Exhibits 2-3. For instance, in June 2012, the newsletter *Dissident Voice* reported on an interview with Washington, in which he claimed to have "new evidence" that attorneys at Loeb, as well as judges, have been involved in a "corrupt conspiracy to collude and commit 'fraud upon the Court.'" *See* http://dissidentvoice.org/2012/06/the-n-word-from-the-champs-elysee-to-avenue-of-the-americas (last visited July 9, 2014). In March 2014, a column in the newsletter *counterpunch* discussed the arbitration in detail (albeit erroneously), in an article headlined *The Systemic Corruption of Our Federal Judicial System: Breaking the Law From the Inside*, available at http://www.counterpunch.org/2014/03/20/arrogant-corruption-in-our-federal-judicial-system (last visited July 9, 2014). Washington was undoubtedly the source for this article as well.

- Harassing and defaming the lead counsel for WME in a mass emailing sent to members of a prominent local bar association (the Federal Bar Council). 7/10/14 Zweig Decl., Exhibit B. In the email, Washington requested that members "be informed and forewarned that there's no place for corruption or racism in our judicial system – for it's only a matter of time before your actions will catch up to you," stating "[j]ust ask Michael Zweig, who will soon have to no choice but to speak when criminal charges are filed against him and other parties involved in the near future." Id.

- Sending rude and harassing emails to WME's counsel, AAA staff, the AAA's President and to the arbitrator. 7/10/14 Zweig Decl., Exhibit F.

- Mass-emailing Loeb partners who have had no involvement with this case. On November 27, 2012, for instance, Washington e-mailed dozens of Loeb attorneys,

3

accusing WME and its lead counsel, of "fraudulently concealing ... 'smoking gun evidence'" and accusing the Court of issuing a "deceptively written judicial opinion produced through 'fraud upon the Court.'" Washington went on to allege that Loeb is "engaging in a 'pattern' of serious unethical and criminal conduct on behalf of William Morris including conspiracy to interfere with civil rights, racketeering and fraud to name a few." 7/10/14 Zweig Decl., Exhibit G.

Washington also made similar baseless and malicious accusations against numerous federal judges. On May 3, 2012, Washington filed in the Second Circuit a motion titled "Expedited Motion for Review to Recall Mandate, Vacate Improvident Order and Articulate Reasoning in the form of a Judicial Opinion, Pending the Filing and Disposition of a Petition for Certiorari," in which he argued that Magistrate Judge James C. Francis is "corrupt," and that there is a pattern and practice of racism inherent in the federal judiciary as a whole. Dkt. No. 51 in Second Circuit Case No. 11-3576.

On April 20, 2012, he sent a letter to the Hon. Loretta A. Preska, accusing District Court Judge Castel and the Second Circuit of being "corrupt and unethical." 7/10/14 Zweig Decl., Exhibit A at 2. In a January 24, 2014 letter to the Hon. Robert P. Patterson, Jr., Washington stated:

> [Y]ou, as well as P. Kevin Castel, have violated numerous canons under the Judicial Code of Conduct. Nothing about your actions constitutes "good Behaviour" and you, as well as Castel, should be impeached by Congress immediately. ...
>
> Although you are 90 years old, you will also be held accountable for conspiring to eviscerate the substantive strength of this nation's civil and human rights laws. Now that our nation approaches the 50 year anniversary of the Civil Rights Act of 1964's passage, it is time for global white/"Jewish" supremacy (racism) to finally be eradicated.

7/10/14 Zweig Decl., Exhibit D at 2.

Following the appointment of the Hon. Timothy K. Lewis as arbitrator (by mutual selection of the parties)[2] in February 2014, Washington's conduct grew even more obstreperous and disruptive. Notwithstanding the entry of a confidentiality order by Arbitrator Lewis, Washington persisted in writing disparaging and false blog posts about the arbitration and its participants, resulting in the arbitrator issuing an Order finding Washington in contempt. 7/3/14 Zweig Decl., Exhibit 3. Washington proceeded to accuse Arbitrator Lewis, the AAA and WME's attorneys of criminal conduct, threatening to sue them and to file fraudulent commercial liens against "all parties involved" if he did not succeed in his lawsuit. 7/3/14 Zweig Decl., Exhibits 2-3.

Washington's earlier communications to this Court on or about November 21, 2013 (7/10/14 Zweig Decl., Exhibit C), February 28, 2014 (Dkt. No. 33), March 5, 2014 (Dkt. No. 36), March 13, 2014 (Dkt. No. 39) and March 28, 2014 (Dkt. No. 44) are already part of the record. Notably, in his November 21, 2013 letter, Washington threatened to file fraudulent liens against this Court and "the other predominantly all-White/'Jewish officers'" who have offended him in the last three years. Washington informed this Court:

> Due to the fact that you intentionally denied me due process and equal protection under the law, your actions fall more into the category of "high crimes and misdemeanors" and you should be impeached for intentionally trying to prevent an impartial jury from deciding this landmark human rights and antitrust case. As a result, if the corruption and fraud continues … *I will be left with no choice but to begin the process of filing a commercial lien against you and the other predominantly all-White/"Jewish" officers that have … violated my constitutional and God-given rights over the last three years[.]*

7/10/14 Zweig Decl., Exhibit C at 2 (emphasis supplied).

---

[2] Arbitrator Lewis (http://www.schnader.com/professionals/xprProfessionalDetails Schnader.aspx?xpST=ProfessionalDetail&professional=142&op=fullbio (last visited July 3, 2014)) was formerly a Judge on the Court of Appeals for the Third Circuit. Judge Lewis replaced David L. Gregory as arbitrator in February 2014, after the AAA had disqualified and removed Arbitrator Gregory pursuant to AAA Employment Rule 16 (rule governing removal of arbitrator for misconduct). See 7/3/14 Zweig Decl., Exhibit 4.

The persistent theme in Washington's correspondence is to accuse WME and its counsel of criminal conduct and to question the capacity of "two white male federal judges" to decide a case "challenging the William Morris Agency's ... century-plus conspiracy to not only maintain its discriminatory, predominately all-white/'Jewish' workforce, but to also help maintain institutional racism throughout society and the world." See, e.g., Dkt. No. 44 at 1.

### B. The Dismissal of Washington's Claims by Arbitrator Lewis

On June 25, 2014, Judge Lewis dismissed all of Washington's claims with prejudice and on the merits, and issued a monetary award to WME in the amount of $43,707.60. 7/3/14 Zweig Decl., Exhibit 2.

In his Decision and Award, Arbitrator Lewis found:

- that Washington had failed to prosecute his claims in good faith, despite being given many opportunities to do so, and that Washington had in fact demanded that the arbitration proceeding be closed and the case dismissed, because (in Washington's own words) he "[could] not and will not continue litigating this case any further under the jurisdiction and supervision of the American Arbitration Association.'" 7/3/14 Zweig Decl., Exhibit 2 at 7 (quoting Washington's March 5, 2014 letter to this Court, Dkt. No. 36).

- that Washington's behavior had "single-handedly prevented this arbitration from moving forward." Id. at 10.

- that Washington had repeatedly violated the Confidentiality Order entered by Arbitrator Lewis, including by writing about the case on his blog even after Arbitrator Lewis had held him in contempt for engaging in that very same conduct. Id. at 12-13.

- that Washington had engaged repeatedly in misconduct by threatening to file suit against WME, its attorneys, numerous federal judges, the Arbitrator (and his law firm associate), the AAA and senior AAA staff, and threatening the "*illegal* filing of fraudulent commercial liens, accompanied by alarming ambiguous statements like 'they will pay.'" Id. at 10 (emphasis in original).

### C.     Threat of Continued Lawsuit Filings by Washington

In a blog entry dated June 13, 2014, Washington posted a photo of what appears to be the cover page and caption of a Complaint to be filed against (among others): WME; Loeb and four of its attorneys; five federal judges sitting in either the Southern District of New York or the Second Circuit; the AAA and four of its employees, including its President; and Arbitrator Lewis, his associate and his law firm. 7/10/14 Zweig Decl., Exhibit E. The blog post is titled: "it's 3 AM and i'm up working on this Complaint against Loeb & Loeb LLP and a number of other Defendants (post-hard drive crash)....i can't believe the shit they've put me through over the last six years. they will pay." Id.

### III.   ARGUMENT

### A.     The Court Has The Authority To Enter An Injunction

The Court has the inherent authority, as well as authority under the All Writs Act (28 U.S.C. §1651), to enjoin Washington in the manner that WME requests. See Robert v. DOJ, 439 F. App'x 32, 35 (2d Cir. 2011) (affirming district court injunction – entered pursuant to the All Writs Act – against plaintiff's filing of complaints raising FOIA claims, given the plaintiff's "history of filing vexatious, burdensome, and meritless FOIA complaints"); Pandozy v. Segan, 340 F. App'x 723, 725 (2d Cir. 2009) ("district courts have the authority to issue filing injunctions to prevent vexatious litigation"); see also Bush v. Danziger, No. 06-5529-PKC, 2006 U.S. Dist. LEXIS 77035 (S.D.N.Y. Oct. 23, 2006) (entering permanent injunction pursuant to the

All Writs Act against the plaintiff's filing of liens). Indeed, "a district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." Safir v. United States Lines, Inc., 792 F.2d 19, 23-24 (2d Cir. 1986) (internal quotations, citations omitted).

### B. Washington's Conduct Warrants Entry Of An Injunction

In considering whether to issue an injunction against the filing of actions, the following factors should be analyzed: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." Safir, 792 F.2d at 24. "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id.

Washington's conduct meets this standard, because:

1) Since the time this Court entered its July 20, 2011 Order mandating arbitration of all of Washington's purported claims, Washington's filings in this Court and in the underlying arbitration have been, without exception, vexatious, harassing and burdensome. Washington has used these filings as a means of threatening, intimidating and defaming anyone who has had even the most limited contact with his case. The threats by Washington to file fraudulent liens and lawsuits against his targets, promising "they will pay," are very real and calculated, as are Washington's dangerous beliefs about the "white/Jewish" conspiracy preventing him from finding employment in the entertainment industry. His appalling theories have no place in the

8

courts, just as they had no place at arbitration. See, e.g., Ransmeier v. Mariani, 718 F.3d 64, 67-70 (2d Cir. 2013) (finding sanctionable an attorney's submissions that repeatedly verbally abused opposing counsel and the district court, exhibited anti-Semitism and advanced "spurious legal positions").

2) Washington's motive in still pursuing litigation after his arbitration proceeding was dismissed with prejudice is to target for financial and reputational harm those whom he has chosen to believe are participating in a "vast conspiracy" against him. All issues and claims that Washington might conceivably raise in a purported new legal proceeding were already raised (or could have been raised) and determined with finality against him in the now-completed arbitration proceeding.

3) Washington's utter lack of respect for courts, judges and arbitrators, and the judicial process, is only compounded by his *pro se* status. While a *pro se* litigant may in certain circumstances be held to less stringent standards (as to pleading matters and the like), the problem at hand arises from Washington's overall conduct, which is not tolerable from any litigant, *pro se* or otherwise. See Lipin v. Hunt, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (entering filing injunction against a plaintiff *pro se*, and holding that "a court's 'special solicitude' towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights") (internal citation, quotations omitted).

4) Washington's conduct has caused, and continues to threaten to cause, wasteful expense to WME and to the court system. In his award dismissing Washington's claims on the merits, Arbitrator Lewis observed that Washington had caused WME to incur "enormous sums of money" in expenses in a protracted arbitration in which Washington evidenced that he had no

9

intention of pursuing his claims and took every opportunity to defame WME and its attorneys. 7/3/14 Zweig Decl., Exhibit 2 at 13. Arbitrator Lewis awarded $43,707.60 to WME, finding among other things that Washington had repeatedly and willfully violated the confidentiality order entered in the arbitration, and had caused WME considerable expense. Id. at 15.

5) No lesser sanction than an injunction prohibiting court filings by Washington, except upon prior permission of the Court, will protect WME and others who have been Washington's targets, because Washington has repeatedly displayed his contempt for judicial orders, and orders by the arbitrator. Indeed, Washington's knowing and willful disobedience of arbitral orders was a major factor leading to the dismissal of his claims, as Arbitrator Lewis concluded that nothing other than dismissal on the merits would put an end to Washington's misconduct. See Sathianathan v. Smith Barney, Inc., No. 04 Civ. 7122, 2006 WL 538152, *34 (S.D.N.Y. Feb. 24, 2006) (sanctioning a *pro se* plaintiff who admitted his intentions to file additional lawsuits to "vindicate his views on the corruptness of the securities industry" after his repeated claims that his former employers conspired with two outside law firms and others to deprive him of his rights on the basis of his race had previously been denied). "One acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Hawkins-El v. AIG Fed. Sav. Bank*, 05 CV 3222, 2010 WL 1292295, at *2 (E.D.N.Y. Feb. 22, 2010) (enjoining plaintiff from filing any further action, pleading, amended pleading, motion or appeal against defendant without prior leave of the court). The filing injunction sought by WME does not seek, and would not prevent, Washington from opposing WME's pending motion to confirm Arbitrator Lewis's June 25 award or his seeking, in this Court, to vacate that award. It would not bar him from the courts entirely, but require only that prior court review and permission be sought and obtained before any new

lawsuit could be filed by Washington against WME, its attorneys, as well as court and American Arbitration Association personnel, and before WME (or any other affected person) had to spend time and money responding to it.

## IV.   CONCLUSION

For the foregoing reasons, it is respectfully submitted that this Court should enjoin Plaintiff Marcus Isaiah Washington from filing, without prior court approval, any additional proceedings, lawsuits or other actions that arise out of, refer to, or relate in any way to the claims he asserted or could have asserted against WME and its affiliates in this action, or in the now-completed AAA arbitration, as well as the facts and circumstances underlying such claims, excepting only that Washington is not prohibited from seeking, by motion or cross-motion made before this Court, to vacate the final arbitration award issued on June 25, 2014 by the presiding arbitrator, the Hon. Timothy K. Lewis.

Dated: New York, New York
       July 10, 2014

                                         LOEB & LOEB LLP

                                         By: _____
                                            Michael P. Zweig (MZ-5318)
                                            Christian D. Carbone (CC-6502)
                                            Michael Barnett (MB-7686)
                                            345 Park Avenue
                                            New York, NY 10154
                                            (212) 407-4000

                                         *Attorneys for Defendants*

12850009

11