UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARCUS I. WASHINGTON,

Plaintiff,

-against-

WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT, LLC, formerly known as
the WILLIAM MORRIS AGENCY, INC., JEFF
MEADE, and SARAH WINIARSKI,

Defendants.
--------------------------------------------------------------x

10-cv-9647 (PKC)

MEMORANDUM
AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-5-14

CASTEL, U.S.D.J.

Plaintiff Marcus Isaiah Washington, proceeding pro se, brings this action against

defendants William Morris Endeavor Entertainment, LLC ("William Morris Endeavor"), and

two William Morris Endeavor Human Resources employees, Jeff Meade and Sarah Winiarski.

Washington moves for reconsideration of this Court's Memorandum and Order, filed March 27,

2014, denying his motion for recusal. Defendants move to confirm an arbitration award rendered

by Arbitrator Timothy K. Lewis on June 25, 2014, which dismissed Washington's claims and

ordered he pay $43,707.60 in costs and fees. Defendants also seek a filing injunction against

Washington. For the reasons further discussed, Washington's motion is denied and defendants'

motions are granted.

BACKGROUND

The following facts are derived from the parties' evidentiary submissions and

matters of which judicial notice may appropriately be taken, and are undisputed unless otherwise

noted.

Plaintiff Marcus Washington initially filed suit against the defendants on December 22, 2010, asserting claims of discrimination and retaliation under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 et seq., as well as New York State Human Rights Law, N.Y. Exec. Law § 296, and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.  (Compl. ¶ 1, Docket # 2.)  In a Memorandum and Order dated July 20, 2011, the Court stayed the litigation pending an award in arbitration.  Washington v. William Morris Endeavor Entm't, LLC, No. 10-cv-9647 (PKC)(JCF), 2011 WL 3251504, at *1 (S.D.N.Y. July 20, 2011).  Familiarity with the facts as described in the Memorandum and Order is assumed.

Washington subsequently appealed the Court's ruling to the Second Circuit.  A panel dismissed the appeal for lack of jurisdiction as a final order had not yet been issued by this Court.  Washington v. William Morris Endeavor Entm't, LLC, No. 11-3576-cv (2d Cir. Dec. 13, 2011), Docket # 39.  The panel also denied Washington's motions for reconsideration en banc and for a stay pending the filing of a petition for a writ of certiorari.  Washington v. William Morris Endeavor Entm't, LLC, No. 11-3576-cv (2d Cir. Feb. 3, 2012), Docket # 46; Washington v. William Morris Endeavor Entm't, LLC, No. 11-3576-cv (2d Cir. May 23, 2012), Docket # 65.  Washington subsequently sent a letter to the Chief Judge of the Southern District of New York to "inform [her] about the bias, impropriety and corruption that is happening within the Southern District of New York and Second Circuit."  (Washington Letter, Apr. 20, 2012, at 1, Docket # 28.)  In the letter, he requested that the Chief Judge "personally intervene and enlist a special committee to investigate the facts and allegations in [the] letter to prevent 'manifest injustice.'"  (Id. at 3.)

On June 15, 2012, Washington submitted a demand for arbitration with the American Arbitration Association (the "AAA").  (Zweig Decl., July 3, 2014, Ex. 1, at 1–2.) David L. Gregory was initially selected as the arbitrator.  (See Emergency Mot. to Disqualify P. Kevin Castel & James C. Francis ("Washington Mot.") Ex. Y, at 3, 15, Docket # 40.)[1]  In the arbitral proceeding, the parties indicated to Arbitrator Gregory that they were amenable to him deciding the matter without an on-site hearing.  (Id. at 3.)  Washington moved for summary judgment on his claims and the defendants moved for the claims to be dismissed.  (Id. at 3–4.) Washington also argued that the arbitration agreement he signed was "unconscionable, tainted with illegality, malum in se, and signed under duress in the depths of the Great Recession." (Washington Mot. Ex. CC, at 4.)

In a series of "Interim Decisions," Arbitrator Gregory set discovery schedules and ruled on threshold issues.  (See Washington Mot. Ex. EE, at 1, 2–6.)  In addition, Arbitrator Gregory expressed concerns as to Washington's behavior during the course of the arbitration, and found that Washington had defamed the defendants:

> Claimant appears to regard as part of a White Supremacist criminal conspiracy virtually every person he perceives as not in complete agreement with him, including distinguished federal judges Patterson and Castel. Claimant, taking issue with Interim Decision 2, surmises that I must have been "threatened" or "bribed" in order to have written such a "deceptive" Interim Decision 2.  I can assure everyone, including Claimant, that I have never been bribed or threatened in my entire career.  Respondents' lawyers and employees have been subjected to a stream of invective from the inception.  Every person, including Claimant, is entitled to their opinions.  But, we are not each

---

[1] Though Washington has not submitted sworn statements support of his submissions, the Court will consider the assertions in his briefs and the accompanying exhibits to the extent that they are otherwise admissible.  See Geldzahler v. N.Y. Med. Coll., 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010) ("[D]espite [plaintiff] having received the 56.2 Notice, we take into account his status as a pro se litigant and will consider the unsworn statements in his 56.1 Response on the assumption that he would have testified to these statements in his Declaration.").

> entitled to our own facts. . . .  Before I arrived on the scene
> as the Arbitrator in the summer of 2012, Claimant had
> already crossed over the line from constitutionally
> protected First Amendment speech into unprotected torts of
> defamation, libel, and slander.  I FIND that Claimant's
> tortious speech continues substantially unabated.

(Id. at 4–5.)  On December 17, 2013, Arbitrator Gregory issued a "Partial Final Award" finding

that William Morris Endeavor had discriminated against Washington in violation of "pertinent

federal, state, and local law."  (Washington Mot. Ex. A, at 1, 13.)  Arbitrator Gregory then

ordered Washington to file a motion for reasonable fees and costs.  (Id. at 12.)

Approximately one month later, on defendants' motion, the AAA's

Administrative Review Council (the "ARC") disqualified Arbitrator Gregory under AAA

Employment Arbitration Rule 16.  (Zweig Decl., July 3, 2014, Ex. 4, at 2.)  In February 2014,

the parties selected Timothy K. Lewis as a replacement arbitrator.  (Id.)

After his appointment as the replacement arbitrator, Arbitrator Lewis issued a

Confidentiality Order in order to "restore order, efficiency, and decorum to a process that had

become bogged down in personal attacks and unwarranted innuendo, and to enable [the] matter

to proceed in good faith."  (Zweig Decl., July 3, 2014, Ex. 3, at 2.)  The Confidentiality Order

explicitly prohibited parties from discussing the proceedings through "any form of

communication, including but not limited to the internet, blogs, and other online media."

(Washington Mot. Ex. KK, at 2.)  Arbitrator Lewis read the contents of the Confidentiality Order

during his first conference call with the parties.  (See Zweig Decl., July 3, 2014, Ex. 3, at 3.)

While the call was in progress, Washington made posts to his blog concerning the

Confidentiality Order and attached the Confidentiality Order to one of the posts.  (Id. at 4.)

According to Arbitrator Lewis, the posts were "inflammatory, racist, and in direct violation of

the Confidentiality Order."  (Id.)

From the time of Arbitrator Lewis's appointment, Washington expressed frustration with both him and the proceeding.  (See Washington Mot. Ex. JJ, at 1 ("If Hon. Lewis is not given and does not begin to read these pleadings before our conference call OR submit a notarized version of his oath, then there is absolutely no point in me getting on this call.  I am not going to waste my time talking with someone who is going to receive $1,000/hour about my case, who knows very little about what has happened and has made a conscious decision to remain in the dark.").)  According to Arbitrator Lewis, during the first conference call Washington was "extremely disruptive," repeatedly interrupted other parties on the call, and called Arbitrator Lewis "crazy."  (Washington Mot. Ex. LL ¶ 2.)

After the call, Arbitrator Lewis decided to hold separate calls with each party.  (Id. ¶ 4.)  The call with Washington did not go well.  Arbitrator Lewis described the call as follows:

> I then spoke with Claimant.  I explained to Claimant that his claims are serious and deserve careful consideration but that he must conduct himself in an appropriate manner as he is acting as his own counsel and is a party to this arbitration.  Claimant refused to listen.  Claimant insisted that I have no authority to conduct this arbitration; that he will not read, respond to, or abide by any of my orders; and that, despite the previous arbitrator's finding of discrimination, he plans to file a motion in federal court to have this arbitration "thrown out" (even though, as I explained to Claimant, only a partial award has been entered and this arbitration is, therefore, not final; and despite the fact that the United Stated District Court for the Southern District of New York previously ruled that he is bound by the agreement he signed to have his claims arbitrated and his appeal of that ruling to the United States Court of Appeals for the Second Circuit was dismissed).  I asked Claimant if there was anything more he wanted to discuss, and he said no.

(Id. ¶ 6.)

After concluding the telephone conversations, Arbitrator Lewis ordered the parties to participate in good faith and warned that further violations of the Confidentiality Order "may result in the dismissal of all claims for abuse of the arbitration process."  (<u>Id.</u> ¶ 7.)  Arbitrator Lewis then invited the parties to submit cross motions to vacate Arbitrator Gregory's Partial Final Award.  (<u>Id.</u>)

Defendants subsequently submitted a motion to vacate Arbitrator Gregory's Partial Final Award.  (Zweig Decl., July 3, 2014, Ex. 4, at 3.)  Washington neither submitted his own motion, nor submitted a response to Arbitrator Lewis.  (<u>Id.</u>)  On April 18, 2014, pursuant to AAA Employment Arbitration Rule 18, Arbitrator Lewis granted the motion and vacated Arbitrator Gregory's award.  (<u>Id.</u> at 3–5.)

While defendants' motion to vacate was pending before Arbitrator Lewis, Washington sought leave from this Court to file an "Emergency Motion" requesting that both the undersigned and Magistrate Judge Francis, to whom the case had been assigned for general pretrial supervision, recuse themselves from the case.  (Docket # 33.)  As the arbitration was still pending before the AAA at that time, the Court ordered that "[n]o motion to disqualify may be filed until 14 days following a Final Award in the arbitration proceeding."  (Order, Mar. 7, 2014, at 2, Docket # 38.)  Despite the Court's explicit Order, Washington filed his proposed motion. (Docket # 40.)  In addition to requesting recusal, Washington requested that a replacement judge sanction opposing counsel and issue a default judgment in his favor.  (Washington Mot. 3.)  Washington's motion was denied by both Magistrate Judge Francis and the undersigned. <u>Washington v. William Morris Endeavor Entm't</u>, No. 10-cv-9647 (PKC)(JCF), 2014 WL 1258308, at *1 (S.D.N.Y. Mar. 26, 2014); (Order, Mar. 27, 2014, at 3, Docket # 43.) Washington subsequently filed a motion for reconsideration.  (Docket # 46.)  In support of his

motion, Washington stated that, should the Court rule against him, he would file a separate action "against all parties involved" including the undersigned, Magistrate Judge Francis, and Judge Patterson[2].  (Pl.'s Mot. for Recons. 30–31.)

In addition to his submissions in support of his motion, Washington also submitted a letter to the Court in which he stated that "[d]ue to the on-going fraud that has occurred since the inception of this case, I cannot and will not continue litigating this case any further under the jurisdiction and supervision of the American Arbitration Association . . . ." (Washington Letter, Mar. 28, 2014, at 2, Docket # 2 (emphasis in original).)  Washington made similar statements to Arbitrator Lewis and the AAA on a number of occasions.  (See, e.g., Washington Letter, Mar. 13, 2014, Ex. A, at 1, Docket # 39 ("I am not proceeding any further with the AAA and Lewis can do whatever he wants to do . . . ."); Pl.'s Mot. for Recons. Ex. D, at 8–9 ("I refuse to re-arbitrate the merits of my case or entertain other legal aspects of this case . . . .").)

Between the time Arbitrator Lewis issued the Confidentiality Order and the time he vacated Arbitrator Gregory's Partial Final Award, Washington continued to post updates to his blog concerning the litigation, in violation of the Confidentiality Order.  (Zweig Decl., July 3, 2014, Ex. 3, at 4.)  The posts contained private communications, the text of Arbitrator Lewis's orders, as well as personal attacks directed at both Arbitrator Lewis and his law firm.  (Id. at 3–4 n.2 (detailing and quoting Washington's blog posts from February 25, 2014, through March 15, 2014).)  Washington also admitted to recording conference calls.[3]  (Id. at 5 n.3.)

---

[2] Judge Patterson has had no role in Washington's case.  Washington's inclusion of Judge Patterson appears to stem from his role as the presiding judge in a separate discrimination case against The William Morris Agency, Inc.  See Rowe Entm't v. William Morris Agency Inc., No. 98-cv-8272 (RPP), 2012 WL 5464611 (S.D.N.Y. Nov. 8, 2012).

[3] In addition to recording conference calls, Washington has apparently been posting his recordings on-line.  (See Washington Mot. 28 & n.2 (quoting from a recording and providing a link to it).)

One of the issues Washington detailed in his postings was the alleged relationship between the AAA and William Morris Endeavor's counsel.  On March 10, 2014, Washington discovered that one member of defendants' legal team was married to an attorney employed by the AAA.  (Washington Mot. 55.)  According to Washington, as the relationship had not been previously disclosed, this was "undeniable proof" that opposing counsel and the AAA had conspired against him.  (Id.)  In response to Washington's allegations, Arbitrator Lewis attested that, though he knew the AAA employee and had worked with her, he did not know her husband, or that she was married, before Washington raised the issue.  (Zweig Decl., July 3, 2014, Ex. 3, at 8 n.7.)  Arbitrator Lewis further stated: "In any event, the fact of this previously unknown relationship has absolutely no bearing on my impartiality in this arbitration just as it did not, and obviously could not have, before Mr. Washington made me aware of it."  (Id.)

Defendants subsequently moved for sanctions for violations of the Confidentiality Order.  (Id. at 1.)  In response to the motion, Washington repeatedly stated that he would continue to violate the Confidentiality Order.  (Pl.'s Mot. for Recons. Ex. D, at 9 ("Lewis cannot genuinely believe that he can come into a three year litigation and issue a Confidentiality Order not knowing the facts of this case, and think that I'm going to comply . . . ."); Id. at 10 ("Until I receive complete and total justice, I will continue to publicly share with the world, the truth about what is happening to me in this case.").)  On April 18, 2014, Arbitrator Lewis concluded that Washington had acted in bad faith and ordered an award to defendants of two-thirds of its legal fees and costs as a sanction.  (Zweig Decl., July 3, 2014, Ex. 3, at 7, 9–10.)  Based on defendants' accounting, the fees totaled $43,707.60.  (Zweig Decl., July 3, 2014, Ex. 2, at 15.)  Arbitrator Lewis noted that he had authority to sanction Washington through the 2009 arbitration agreement between Washington and William Morris Endeavor as its scope included "all

disputes" between the parties.  (Zweig Decl., July 3, 2014, Ex. 3, at 8–9.)  Arbitrator Lewis further warned Washington that his conduct was "unacceptable" and that further actions "may result in additional sanctions, including [a] recommendation to the AAA that it terminate [the] arbitration, with prejudice."  (Id. at 10 (emphasis removed).)

Despite Arbitrator Lewis's warning, Washington continued to make posts to his blog discussing the proceedings.  (Washington Letter, July 15, 2014, Ex. A, at 2–7 nn.1–9, Docket # 57 (detailing and quoting Washington's blog posts from April 18, 2014, through June 10, 2014).)  In one blog post, Washington stated that he was working on a new complaint against opposing counsel, Arbitrator Lewis, and others and threatened to file commercial liens against "all parties involved."  (Id. at 2–3 & n.1; Zweig Decl., July 10, 2014, Ex. C, at 2.)  In a later post, Washington posted an image of the cover page of a complaint he was drafting naming as defendants, inter alia, opposing counsel, Arbitrator Gregory, Arbitrator Lewis, three named Circuit Judges, Judge Patterson, the Chief Judge of the Southern District of New York, the undersigned, the AAA, and the United States of America.  (Zweig Decl., July 10, 2014, Ex. E, at 1.)

In his subsequent communications, Washington repeatedly suggested that Arbitrator Lewis dismiss the case.  (Pl.'s Mot. for Recons. Ex. D, at 10; Zweig Decl., July 3, 2014, Ex. 2, at  2.)  On April 29, 2014, Arbitrator Lewis held a conference call with the parties. (Washington Letter, July 15, 2014, Ex. A, at 3.)  The call quickly descended into disorder.  (Id.) According to Washington, this occurred when he raised the issue of arbitrability and asserted that his due process and equal protection rights were being violated, fraud was being committed, and Arbitrator Lewis was exceeding his powers.  (Id.)  Arbitrator Lewis repeatedly asked whether Washington would proceed in good faith, or whether he desired a dismissal of the arbitration.

(<u>Id.</u>)  Each time, Washington stated that due to "ongoing fraud" he would not continue in good faith.  (<u>Id.</u>)  Near the end of the call, Washington stated that he would "soon" be suing Arbitrator Lewis as well.  (<u>Id.</u>)  Washington states that "of course" he recorded the call and recorded all the conference calls.  (<u>Id.</u>)

Arbitrator Lewis then invited defendants to move to dismiss Washington's claims given Washington's request to do so and his violations of the Confidentiality Order.  (<u>Id.</u>)  Defendants subsequently moved for an order dismissing Washington's claims.  (<u>See id.</u> at 1.)  In response to the motion, Washington sent an e-mail to opposing counsel stating that an adverse ruling would not prevent him from litigating his case and promising that neither defendants nor opposing counsel would "get away" with their actions.  (Zweig Decl., July 10, 2014, Ex. F, at 1.)

On June 25, 2014, Arbitrator Lewis dismissed Washington's claims "with prejudice and on the merits."  (Washington Letter, July 15, 2014, Ex. A, at 14.)  Arbitrator Lewis provided two bases for his dismissal.  First, he ordered dismissal because Washington requested the arbitration to be terminated.  (<u>Id.</u> at 8.)  Second, Arbitrator Lewis found that dismissal was warranted as a sanction for Washington's repeated violations of his orders, including the Confidentiality Order.  (<u>Id.</u>)  Arbitrator Lewis drew authority for the sanction from the parties' arbitration agreement and the "rules and applicable law" governing the arbitration.  (<u>Id.</u> at 8–9.)  Washington subsequently moved for reconsideration of the dismissal.  (Washington Letter, July 15, 2014, at 2.)

After Arbitrator Lewis dismissed Washington's claims, defendants moved to confirm the arbitral award and moved for a filing injunction against Washington.  (Docket # 49, 55.)  As Washington's motion for reconsideration was still pending before Arbitrator Lewis, he viewed defendants' actions as premature.  (Washington Letter, July 15, 2014, Ex. C, at 2.)

Washington informed opposing counsel that its actions throughout the litigation ensured that he

would be "deprived of [his] rights under the color of law" and was the primary reason he would

be "taking legal action against [the firm] and other involved in this heinous conspiracy to

interfere with the human rights of African Americans."  (Id.)

      Arbitrator Lewis denied Washington's motion on July 22, 2014.  (Barnett Letter,

July 29, 2014, Attach., at 1, Docket # 58.)

DISCUSSION

      As Washington is proceeding pro se, the Court construes his submissions "to raise

the strongest arguments that they suggest."  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)

(internal quotation marks and citation omitted).

    I.   Washington's Motion for Reconsideration Is Denied.

      Motions for reconsideration are governed by Local Civil Rule 6.3 and Rule 60(b),

Fed. R. Civ. P.  A motion to reconsider is "addressed to the sound discretion of the district

court[.]"  See Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990).  A

motion for reconsideration "is generally not favored and is properly granted only upon a showing

of exceptional circumstances."  Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (internal

citation and quotation marks omitted).  "The standard for granting such a motion is strict, and

reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked—matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d

255, 257 (2d Cir. 1995).  "[A] motion to reconsider should not be granted where the moving

party seeks solely to relitigate an issue already decided."  Id.

      Motions for reconsideration "should be granted only when the defendant

identifies an intervening change of law, the availability of new evidence, or the need to correct a

- 11 -

clear error or prevent manifest injustice."  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL

Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (internal citation and quotation marks

omitted).

    Washington's submission does not identify any new facts that were not before the

Court when it issued its Order.  Further, Washington does not identify an intervening change in

law that would alter the Court's prior ruling.  Washington argues that the Court in its prior ruling

did not read his motion in its entirety or "with actual comprehension" because it did not reach the

issue of sanctions against opposing counsel or the request for a default judgment.  Washington

had explicitly requested that these issues be decided by a replacement judge and not the

undersigned.  (Washington Mot. 3 ("Secondly, I am asking for the impartial federal judge that

replaces Castel to determine . . . .").)  As the Court's Order denied the portion of Washington's

motion seeking recusal, it was not necessary to reach the remainder of the motion.

    Because the additional issues raised in Washington's motion were contingent on

the granting his request for recusal, the Court did not err in not addressing the issues raised.

Consequently, Washington's motion for reconsideration is denied.

    II.  Defendants' Motion to Confirm the Arbitration Award Is Granted.

    The FAA provides a "streamlined" process for a party seeking "a judicial decree

confirming an award, an order vacating it, or an order modifying or correcting it."  Hall Street

Associates L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).  Under section 9 of the FAA, "a

court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as

prescribed' in §§ 10 and 11."  Id. (quoting 9 U.S.C. § 9).  Section 10(a) of the FAA enumerates

four situations in which a court may enter an order vacating an arbitration award:

    (1)  where the award was procured by corruption, fraud, or
    undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a).

In this Circuit, grounds for vacatur under section 10 include an arbitrator's "manifest disregard" for the law. T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339–40 (2d Cir. 2010). An award is in manifest disregard of the law if the arbitrators are "fully aware of the existence of a clearly defined governing legal principle, but refuse[ ] to apply it, in effect, ignoring it." Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 96 (2d Cir. 2008) (alteration in original and citation omitted), rev'd on other grounds, 559 U.S. 662 (2010).

Section 11 of the FAA provides that a court may "make an order modifying or correcting" an award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. Finally, a court may remand an award to an arbitrator if the award is so indefinite or ambiguous that the court does not "know exactly what it is being asked to enforce." Ams. Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985).

- 13 -

In opposition to defendants' motion to confirm the award, Washington provides four arguments as to why the arbitral award should be set aside. First, Washington argues that Arbitrator Gregory was improperly removed and, consequently, all of Arbitrator Lewis's orders, including the order vacating Arbitrator Gregory's partial award, are void. Second, Washington asserts that Arbitrator Gregory and Arbitrator Lewis's decisions to enforce the arbitration agreement were in manifest disregard of the law. Third, Washington argues that the failure to disclose the alleged relationship between opposing counsel and an AAA employee biased the arbitral proceedings in defendants' favor. Finally, he asserts that opposing counsel has been engaging in a pattern of bad faith litigation warranting their removal and sanctions.

a. Neither Arbitrator Gregory's Removal, Nor Arbitrator Lewis's Actions Were Unlawful.

Washington's claims in arbitration were governed by the AAA Employment Arbitration Rules & Mediation Procedures. Rule 16 of these rules governs the procedure to disqualify an arbitrator. Under Rule 16, a party may object to an arbitrator to the AAA, which determines whether an arbitrator should be disqualified. Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures ("Arbitration Rules"), Rule 16(b). The AAA's decision is conclusive. Id. Within the AAA, objections to appointed arbitrators are heard by the ARC. See Am. Arbitration Ass'n Admin. Review Council, Review Standards 1, available at https://www.adr.org/cs/idcplg?IdcService=GET_FILE&dDocName=ADRSTAGE2012632&RevisionSelectionMethod=LatestReleased. According to the ARC, an objection to an arbitrator may be made "at any time in the arbitration, up to the issuance of the Award or other terminating order." Id. at 2. The inclusion of the clause "other terminating order" indicates that the "Award" contemplated by the ARC in this context is a final award conferring jurisdiction to a competent court. See Michaels v. Mariforum Shpping, S.A., 624 F.2d 411, 414 (2d Cir. 1980) (construing

the phrase "the award" in 9 U.S.C. § 10(a) to confer jurisdiction on a federal court only after a final award).

Washington asserts that the ARC exceeded its authority by removing Arbitrator Gregory as an award had already been issued.  The Court assumes, without deciding, that decisions by the ARC are reviewable under the same standards as a decision by an arbitrator.  An inquiry as to whether an arbitral panel exceeded its powers focuses on whether the panel had the authority to reach an issue and not whether the issue was correctly decided.  DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 824 (2d Cir. 1997).

In order for an award to be "final," an arbitration award "must be intended by the arbitrators to be their complete determination of all claims submitted to them."  Michaels, 624 F.2d at 413.  Arbitrator Gregory's "Final Partial Award" was not a complete determination of all claims.  In the award, Arbitrator Gregory explicitly left open the issues of Washington's reasonable fees and costs.  (Washington Mot. Ex. A, at 12.)  "Generally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages."  Michaels, 624 F.2d 413–14.

By leaving open the issue of costs, Arbitrator Gregory's award did not end the arbitration proceedings and was therefore not a "final" decision.  As the award did not terminate the arbitral proceeding, the ARC had the authority to decide on arbitrator objections.

Washington also argues that Arbitrator Lewis exceeded his powers when he vacated Arbitrator Gregory's award.  When Arbitrator Gregory was removed, an arbitrator vacancy was created.  Under Rule 18 of the Arbitration Rules, a vacancy is filled "in accordance with applicable provisions of these Rules."  Arbitrator Lewis was chosen to fill the vacancy by mutual consent of the parties.  (Zweig Decl., July 3, 2014, Ex. 4, at 2.)  The appointment of

Arbitrator Lewis as a neutral arbitrator was consistent with Rule 12 of the <u>Arbitration Rules</u>.

When an arbitrator is chosen to fill a vacancy as a substitute arbitrator, the panel "shall determine

in its sole discretion whether it is necessary to repeat all or part of any prior hearings."

<u>Arbitration Rules</u>, <u>supra</u>, Rule 18.

As Arbitrator Lewis had the authority to determine whether prior proceedings

were to be repeated, he did not exceed his powers in vacating the previously issued award.

        b.   The Decisions to Enforce the Arbitration Agreement Were Not in <u>Manifest Disregard of the Law.</u>

In support of his argument that the arbitration agreement should not have been

enforced, Washington asserts that claims brought under Title VII are not arbitrable and that the

arbitration agreement was unconscionable.  A party seeking to vacate an arbitration award based

on an alleged manifest disregard of the law must show some "egregious impropriety on the part

of the arbitrator."  <u>T.Co Metals, LLC</u>, 592 F.3d at 339.  Thus, an award will be enforced if there

is a "barely colorable justification" for the outcome reached.  <u>Id.</u>

In its prior Memorandum and Order staying the litigation in pending an award in

arbitration, the Court held that Washington "ha[d] not shown that Congress intended to preclude

arbitration for claims asserted under either Title VII or 42 U.S.C. § 1981."  <u>Washington</u>, 2011

WL 3251504, at *10.  The Court also held that the arbitration agreement provided the arbitrator

with the exclusive authority to decide issues of arbitrability and that the "Delegation Provision,"

which granted the arbitrator this authority, was not unconscionable.  <u>Id.</u> at *5–6.  The Court

declines to revisit its prior decision.

In sanctioning Washington and dismissing his claims, Arbitrator Lewis drew

authority from the arbitration agreement.  (Washington Letter, July 15, 2014, Ex. A, at 8–9.;

Zweig Decl., July 3, 2014, Ex. 3, at 8–9.)  Arbitrator Lewis did not directly address

Washington's argument that the agreement was unconscionable.  (See Washington Letter, July 15, 2014, Ex. A, at 8–9.; Zweig Decl., July 3, 2014, Ex. 3, at 8–9.)  In relying on the arbitration agreement for authority, Arbitrator Lewis implicitly determined that the agreement itself was not unconscionable.

Arbitrator Lewis was under no obligation to provide the reasoning for his award and courts will generally not attempt to analyze the reasoning process of an arbitrator.  Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008).  However, "where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard."  Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 204 (2d Cir. 1998).

There is a "barely colorable justification" for Arbitrator Lewis's determination that the agreement was not unconscionable.  In its prior opinion, the Court held that the "Delegation Provision" itself was not unconscionable and addressed arguments similar to those Washington raised with Arbitrator Lewis.  See Washington, 2011 WL 3251504, at *7–8.  Similar reasoning could conceivably justify a finding that the agreement as a whole was also not unconscionable.  Consequently, the Court concludes that Arbitrator Lewis did not act in manifest disregard of the law.

c.  The Arbitrator Did Not Exhibit Evident Partiality in Favor of Defendants.

Washington argues that Arbitrator Lewis exhibited evident partiality in favor of defendants due to the relationship between opposing counsel and the AAA.  Under section 10(a)(2) of the FAA, "evident partiality" will be found "when a reasonable person, considering all of the circumstances, would have to conclude that an arbitrator was partial to one side."

Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d

Cir. 2007) (internal quotation marks and citation omitted) (emphasis in original).  An arbitrator

who knows of a material relationship with a party and fails to disclose it meets this standard.  Id.

The party asserting evident partiality has the burden of proof.  Andros Compania Maritima, S.A.

v. Marc Rich & Co., 579 F.2d 691, 700 (2d Cir. 1978).

Four factors are helpful in determining whether nondisclosure meets the evident

partiality standard: "(1) the extent and character of the personal interest, pecuniary or otherwise,

of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator

and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and

(4) the proximity in time between the relationship and the arbitration proceeding."  Scandinavian

Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 74 (2d Cir. 2012) (internal

quotation marks and citation omitted).  Though the factors are useful, they are not "mandatory,

exclusive, or dispositive."  Id.  "Partiality need not be actually proven to be the basis for a

reasonable conclusion of partiality, but it may not be based simply on speculation either."

United States v. Int'l Bhhd. of Teamsters, 170 F.3d 136, 147 (2d Cir. 1999).

Arbitrator Lewis has stated that he was unaware of the relationship between

opposing counsel's law firm and an AAA employee before Washington brought it to his

attention.  (Zweig Decl., July 3, 2014, Ex. 3, at 8 n.7.)  Once it had been brought to his attention,

Arbitrator Lewis attested that the relationship had no bearing on his impartiality.  (Id.)

Washington has not submitted evidence that Arbitrator Lewis was dishonest in these statements.

Because there is no evidence in the record that Arbitrator Lewis was influenced in

his decisions, Washington has not met his burden of showing that a reasonable person would

necessarily conclude, and the Court will not speculate, that solely on the potential relationship

between opposing counsel and a single AAA employee, that Arbitrator Lewis was biased toward defendants.

### d.   Defendants Did Not Secure the Award Through Improper Means.

Washington refers to the actions of opposing counsel as engaging in bad faith litigation.  Bad faith is not a basis for vacatur under the FAA.  In light of Washington's pro se status, the Court construes this argument as an assertion that opposing counsel used undue means to procure an award in defendants' favor.  See 9 U.S.C. 10(a)(1).  "Undue means" requires "nefarious intent or bad faith, or conduct that is immoral, if not illegal."  ARMA, S.R.O. v. BAE Sys. Overseas, Inc., 961 F. Supp. 2d 245, 254 (D.D.C. 2013) (internal citations and quotation marks omitted).

In his submissions, Washington accuses opposing counsel of withholding evidence, and calls them "kings of deception" and "masterful manipulators."  Assuming, arguendo, that Washington's assertions are true, those actions did not cause defendants to procure an award in their favor.  Arbitrator Lewis provided two bases for his dismissal of Washington's claims—Washington requested dismissal, and as a sanction for his repeated violations of the Confidentiality Order.  (Washington Letter, July 15, 2014, Ex. A, at 8.)  Washington's actions, and not the defendants', resulted in the adverse ruling.  Washington may not now claim that opposing counsel caused Arbitrator Lewis to terminate the arbitration.

### III. Defendants' Motion for a Filing Injunction Is Granted.

A district court possesses the authority to issue a filing injunction when "a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings."  Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (per curiam) (internal quotation marks, alterations, and citations omitted); see also Malley v. N.Y.

City Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997) (per curiam) (filing injunction appropriate if numerous complaints filed based on the same events).

To protect a party's due process rights, "[t]he unequivocal rule in [the Second Circuit] is that the district court may not impose a filing injunction on a litigant sue sponte without providing the litigant with notice and an opportunity to be heard." Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998). Where, as here, plaintiff was provided with notice and the opportunity to be heard on defendant's request for a filing injunction, the requirements of due process are satisfied.

In determining whether a filing injunction is appropriate, the Second Circuit has enumerated a number of factors for the district court to consider, including "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation . . . ; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id.

The Court concludes that the circumstances of this case warrant restrictions on Washington's further ability to pursue litigation in federal court arising out of his employment with William Morris Endeavor.

First, Washington has repeatedly threatened to continue litigation, even if the instant action were to be dismissed with prejudice. In a blog post, he provided an image of a

proposed complaint that names as defendants every person who he feels has wronged him

through the course of this litigation, including judges of the Second Circuit and the Chief Judge

of the Southern District of New York.  (Zweig Decl., July 10, 2014, Ex. E, at 1.)  Washington

has also explicitly threatened to sue both Arbitrator Lewis and the undersigned should an adverse

ruling be issued.  (Washington Letter, July 15, 2014, Ex. A, at 2–3 & n.1; Pl.'s Mot. for Recons.

30–31.)  Further, he stated that, should subsequent suits not be successful, he would file

commercial liens against "all parties involved."  (Washington Letter, July 15, 2014, Ex. A, at 2–

3 & n.1.)  Washington's threatened actions would constitute "vexatious, harassing, or

duplicative" lawsuits.

       Second, Washington's motive in pursuing additional litigation appears to be in

bad faith, is punitive, and is not limited to compensation for a perceived wrong.  Washington

made statements to opposing counsel that they would not "get away" with their actions.  (Zweig

Decl., July 10, 2014, Ex. F, at 1.)  With each decision of an Arbitrator, or a court, Washington's

list of defendants for his threatened suit increased.  Arbitrator Gregory noted that Washington

appears to regard those who disagree with him as members of a vast conspiracy.  (Washington

Mot. Ex. EE, at 4–5.)  There is ample support for Arbitrator Gregory's observation in

Washington's numerous submissions to this Court.  (See, e.g., Zweig Decl., July 10, 2014, Ex. F,

at 2 (". . . I will be left with no choice but to being the process of filing a commercial lien against

[the undersigned] and the other predominately all-White/"Jewish" officers that have not only

violated my constitutional and God-given rights over the last three years, but have also engaged

in a sinister conspiracy to interfere with the human rights of African Americans by ensuring that

racism (global white supremacy) is maintained through America and the world . . . .");

Washington Letter, July 15, 2014, Ex. A, at 14 ("Lewis, the AAA, [opposing counsel], and

William Morris are PRETENDING that Lewis has the actual authority to make the numerous adverse decisions that he's made against me.").)  Washington's assertions and behavior indicate that claims in pursuit of his motives would be frivolous if brought.  See Ransmeier v. Mariani, 718 F.3d 64, 70–71 (2d Cir. 2013) ("What [a litigant] is not allowed to do, however, is to let his misguided views cloud his judgment regarding what arguments may properly be made to this Court.").

Third, the Court takes note of Washington's pro se status.  However, "a court's special solicitude towards pro se litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights."  Lipin v. Hunt, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  "[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders."  McDonald v. Head Crim. Ct. Supervisor Officers, 850 F.2d 121, 124 (2d Cir. 1988).

Fourth, Washington has caused needless expense to the opposing party.  Washington violated orders issued in the arbitral proceeding.  His behavior led to the imposition of sanctions totaling two-thirds of defendants' additionally incurred costs, computed to be $43,707.60.  (Zweig Decl., July 3, 2014, Ex. 2, at 15; Zweig Decl., July 3, 2014, Ex. 3, at 7, 9–10.)  Washington has repeatedly refused to cooperate in the arbitral proceeding, leading to additional delay and costs to the defendants.  (See Washington Letter, Mar. 28, 2014, at 2; Washington Letter, July 15, 2014, Ex. A, at 3.)

Finally, Washington has repeatedly stated that he intends to continue litigation and intends to file commercial liens against "all involved," regardless of any court order.

Arbitrator Lewis's issuance of monetary sanctions has not appeared to have an effect on

Washington's actions.  Consequently, the Court concludes that lesser sanctions would not be

adequate to protect the courts and other parties.  The evidence demonstrates that Washington "is

likely to continue to abuse the judicial process and harass other parties . . . ."  The Court will

impose an injunction that is tailored to be the least restrictive to achieve its purpose.  See Bd. of

Managers of 2900 Ocean Ave. Condominium v. Bronkovic, 83 F.3d 44, 44 (2d Cir. 1996) (per

curiam).

CONCLUSION

For the reasons explained, Washington's motion for reconsideration (Docket

# 46) is DENIED.  Defendants' motion to confirm the arbitral award (Docket # 49) is

GRANTED.  Defendants' motion for a filing injunction against Washington (Docket # 53) is

GRANTED.

**FROM THE DATE OF THIS ORDER, MARCUS I. WASHINGTON AND
THOSE ACTING IN ACTIVE CONCERT OR PARTICIPATION WITH HIM ARE
PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:**

> **(1) FILING OR OTHERWISE COMMENCING ANY ACTION IN ANY
> FEDERAL DISTRICT COURT ARISING OUT OF OR RELATING TO
> HIS EMPLOYMENT BY OR TERMINATION FROM WILLIAM
> MORRIS ENDEAVOR ENTERTAINMENT LLC, FORMERLY
> KNOWN AS THE WILLIAM MORRIS AGENCY, INC., AGAINST
> ANY PERSON OR ENTITY INCLUDING, BUT NOT LIMITED TO,
> DEFENDANTS AND THEIR PRESENT OR FORMER EMPLOYEES,
> AGENTS, OR ATTORNEYS, THE AMERICAN ARBITRATION
> ASSOCIATION AND ITS PRESENT OR FORMER EMPLOYEES OR**

- 23 -

AGENTS, ARBITRATORS,  OR ANY JUDGE, CLERK, COURT

REPORTER, EMPLOYEE OR AGENT OF ANY COURT OF THE

UNITED STATES OF AMERICA WITHOUT FIRST OBTAINING A

WRITTEN ORDER FROM THIS COURT AUTHORIZING HIM TO

DO SO.

(2) FILING OR OTHERWISE COMMENCING ANY ACTION IN ANY

FEDERAL DISTRICT COURT ARISING OUT OF OR RELATING TO

THIS ACTION OR THE ARBITRATION PROCEEDING BEFORE

ARBITRATORS GREGORY AND LEWIS AGAINST ANY PERSON

OR ENTITY INCLUDING, BUT NOT LIMITED TO, DEFENDANTS

AND THEIR PRESENT OR FORMER EMPLOYEES, AGENTS, OR

ATTORNEYS, THE AMERICAN ARBITRATION ASSOCIATION

AND ITS PRESENT OR FORMER EMPLOYEES OR AGENTS,

ARBITRATORS,  OR ANY JUDGE, CLERK, COURT REPORTER,

EMPLOYEE OR AGENT OF ANY COURT OF THE UNITED STATES

OF AMERICA WITHOUT FIRST OBTAINING A WRITTEN ORDER

FROM THIS COURT AUTHORIZING HIM TO DO SO.

(3) TRANSMITTING OR FILING ANY DOCUMENT WHICH

PURPORTS TO CREATE A LIEN OR RECORD OF ANY DEBT

AGAINST ANY PERSON OR ENTITY INVOLVED IN THIS ACTION

OR THE ARBITRATION PROCEEDING BEFORE ARBITRATORS

GREGORY AND LEWIS, INCLUDING, BUT NOT LIMITED TO,

DEFENDANTS AND THEIR PRESENT OR FORMER EMPLOYEES,

AGENTS, OR ATTORNEYS, THE AMERICAN ARBITRATION ASSOCIATION AND ITS PRESENT OR FORMER EMPLOYEES OR AGENTS, ARBITRATORS,  OR ANY JUDGE, CLERK, COURT REPORTER, EMPLOYEE OR AGENT OF ANY COURT OF THE UNITED STATES OF AMERICA WITHOUT FIRST OBTAINING A WRITTEN ORDER FROM THIS COURT AUTHORIZING HIM TO DO SO.

A VIOLATION OF THIS INJUNCTION MAY RESULT IN A FINDING OF CONTEMPT OF COURT AND IMPOSITION OF SANCTIONS.  NOTHING IN THIS ORDER SHALL PREVENT MARCUS I. WASHINGTON FROM PARTICIPATING IN ANY ARBITRATION OR PROCEEDING HERETOFORE COMMENCED OR APPEALING ANY ORDER OF THIS COURT.

MARCUS I. WASHINGTON IS ADVISED THAT IT IS A FEDERAL CRIME, PUNISHABLE BY FINE OR IMPRISONMENT OF UP TO TEN YEARS, TO FILE, ATTEMPT TO FILE, OR CONSPIRE TO FILE, "ANY FALSE LIEN OR ENCUMBRANCE AGAINST THE REAL OR PERSONAL PROPERTY" OF ANY "OFFICER OR EMPLOYEE OF THE UNITED STATES OR OF ANY AGENCY IN ANY BRANCH OF THE UNITED STATES GOVERNMENT . . . WHILE SUCH OFFICER OR EMPLOYEE IS ENGAGED IN OR ON ACCOUNT OF THE PERFORMANCE OF OFFICIAL DUTIES, OR ANY PERSON ASSISTING SUCH AN OFFICER OR EMPLOYEE IN THE PERFORMANCE OF SUCH DUTIES OR ON ACCOUNT OF THAT ASSISTANCE."  18 U.S.C. §§ 1521, 1114.

The Clerk shall enter judgment for the defendants and close the case.  Counsel for defendants is directed to supply plaintiff with copies of all unreported decisions cited herein.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 5, 2014